IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ERIC HERSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3225 |
| | ) | |
| JOHN GILLETTE, the SHERIFF'S OFFICE OF SANGAMON COUNTY, and SANGAMON COUNTY, | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants John Gillette, the Sheriff's Office of Sangamon County and Sangamon County (d/e 39) (Motion). On August 13, 2004, Defendant Sangamon County Deputy Sheriff John Gillette arrested Plaintiff Eric Hersey for being a deserter from the Illinois National Guard. Hersey spent one night in jail and then was released. Hersey claims Gillette arrested him without probable cause in violation of his rights. Defendants now seek summary judgment. For the reasons set forth below,

issues of fact exist regarding whether Gillette had probable cause to arrest Hersey.[1]  The Defendants' request for summary judgment is denied.

At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Hersey.  Any doubt as to the existence of a genuine issue for trial is resolved against the Defendants.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once the Defendants have produced evidence showing that they are entitled to summary judgment, Hersey must present evidence to show that issues of fact remain.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In this case, Hersey has presented evidence to show that issues of fact exist regarding whether he was arrested without probable cause.

The following is Hersey's evidence of the relevant events.  Hersey was a member of the Illinois Army National Guard.  In the late spring or early summer of 2004, Hersey transferred to the Washington Army National

---

[1] The Defendants did not move for summary judgment based on a lack of municipal liability.  <u>Motion</u>, at 13; <u>see</u> <u>Gable v. City of Chicago</u>, 296 F.3d 531, 537 (7th Cir. 2002).  The Court, therefore, does not address this issue.

Guard. He went to Camp Lincoln in Springfield, Illinois, on August 13, 2004, to get his medical records. Hersey worked as a police officer at the University of Illinois Chicago. He arrived at Camp Lincoln in his police uniform and was carrying his service weapon. <u>Plaintiff's Response to Defendants John Gillette, the Sheriff's Office of Sangamon County and Sangamon County's Motion for Summary Judgment (d/e 51) (Response)</u>, Exhibit D, <u>Hersey Affidavit</u>, at 1-2.

According to Hersey, Gillette met him at the gate and ordered him to turn over his weapon. Hersey asked why. Gillette stated that there was a warrant for his arrest as a deserter from the Illinois Army National Guard. Gillette said that Hersey was supposed to have reported to Fort Polk, Louisiana, with his unit. Hersey was handcuffed. Illinois Army National Guard Captains Weaver and Trenton Thompson were with Gillette at the gate at the time that he arrested Hersey.[2] Hersey told the three men that he was not a deserter. He explained that he transferred to the Washington Army National Guard. Captain Weaver stated that Hersey came up as a "hit" for desertion on the National Crime Information Center (NCIC) database. <u>Id.</u>, at 2.

---

[2]The parties do not state Captain Weaver's first name.

3

Gillette then put Hersey in the back of his squad car. While Hersey was in the car, Gillette ran a search on the Law Enforcement Agencies Data Base System (LEADS), which was connected to the NCIC. The search did not turn up a warrant for Hersey. Hersey said, "I thought I was being arrested for a warrant." Gillette then said to Hersey, "I know what you're trying to do. I just got back from deployment myself, but these guys want you arrested." Gillette then got out of the car. Id., at 2-3.

Gillette, Weaver, and Thompson then had a discussion outside the car. The car windows were open, and Hersey heard the conversation. Gillette told the other men that there was no warrant for Hersey's arrest. Gillette stated that he "needed something to hold this guy on." Weaver then went into a nearby building and returned in about fifteen minutes. Weaver said, "I talked to someone at Ft. Polk, and there's nothing on this guy. They said if he belongs at Ft. Polk to buy him a ticket and fly him down there." Weaver then said, "His ass might get out but he's going to spend the night in jail anyway." The three men laughed. Gillette then said, "Well that's fine, but I still need something to make this fly." Id., at 3.

Weaver then re-entered the nearby building and returned about fifteen minutes later. Weaver came back with a DD Form 553. Gillette then said,

4

"I can make this work."  Id.  The form was entitled, "Deserter/Absentee Wanted by the Armed Forces."  Motion, attached Affidavit of Seth Hible, Attachment 5.  The form identified Hersey as the person wanted by the Armed Forces.  The form was signed by Seth Hible as Company Commander of Company B, First Battalion, 131st Infantry.  Id.

Gillette then took Hersey to the Sangamon County Jail.  Upon arrival, a woman deputy began yelling at Gillette.  She said that Hersey should not be there, that this was not how arrests of military personnel were done, and that Gillette knew this.  The woman deputy called Hersey's arrest "bullshit."  Gillette responded, "Well, I don't work for you right now, so you're going to house him."  The woman deputy gave in and directed Gillette to put Hersey in a cell.  Hersey Affidavit, at 3.

While waiting to be booked, Hersey heard someone call to Gillette stating, "Gillette, I've got Ft. Leonard Wood, MO fugitive app's on the phone and they say they don't want him."  Hersey understood this statement to refer to the Ft. Leonard Wood fugitive apprehension team.  Gillette took the phone and stated, "I spoke to Ft. Polk and the lady who enters warrants wasn't there, they said they would enter the warrant so I'm gonna sit on him and call you back."  Id., at 4.

5

After Hersey was booked and placed in a cell, Gillette left. Hersey never saw him again. The next day, Hersey was released. Id.

Gillette's version of the events is quite different. According to Gillette, he was told by Captain Thompson that officials at Ft. Polk issued a warrant for Hersey's arrest. Thompson told Gillette that MPs from Ft. Leonard Wood were coming to Camp Lincoln to take Hersey into custody. Motion, attached Affidavit of John Gillette, at 1. Gillette conducted a LEADS search and Hersey's name did not turn up. Gillette then called the Provost's Marshall's office at Ft. Polk. The representative of that office told Gillette that the warrant had been issued. Based on this information, Gillette waited at the Camp Lincoln gate for Hersey's arrival. Once Hersey arrived, Gillette took Hersey into custody. Id., at 1.

Hersey told Gillette that he had transferred to the Washington Army National Guard. Gillette called Captain Thompson with this information. Thompson called Gillette back a few minutes later. According to Gillette, Thompson told Gillette that Hersey had not been released from the Illinois Army National Guard, and therefore, was still subject to the Illinois Army National Guard. Id. Gillette then took Hersey to the Sangamon County Jail for booking to await the military police. Gillette states that after he

6

arrived at the Sangamon County Jail with Hersey, representatives at Camp Lincoln faxed a copy of the DD Form 553 to the jail. Gillette understood the form to be the equivalent of a warrant. Id.

Gillette denies that he had any of the conversations with Captain Weaver and Thompson that Hersey claims occurred while Hersey was sitting in Gillette's squad car. He also denies having the conversation with the woman deputy at the Sangamon County Jail that Hersey claims occurred. Reply Brief of John Gillette, the Sheriff's Office of Sangamon County and Sangamon County in Support of Their Motion for Summary Judgment (d/e 54) (Reply), attached Affidavit of John Gillette. Thompson corroborates Gillette's version of the events. Reply, attached Affidavit of Trenton Thompson.

## ANALYSIS

An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge, based on reasonably trustworthy information, are sufficient to warrant a prudent person to believe that the suspect committed an offense. Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). In determining the existence of probable cause, the information presented to the arresting officer is evaluated from

the view of a reasonable person in the position of the arresting officer.  Id.

If jurors believed Hersey's version of the events, they could conclude that: (1) the LEADS search did not turn up Hersey's name; (2) Weaver told Gillette that he spoke to the authorities at Ft. Polk, and learned that Hersey was not wanted; but, (3) Weaver wanted Hersey to spend a night in jail anyway, and Gillette complied.  Gillette, thus, had reasonably trustworthy information that Hersey had not committed an offense, but arrested him anyway.  Gillette disputes this version of the events, but that dispute only creates an issue of fact for the jury.  Defendants' request for summary judgment is denied.

Defendants argue that Gillette could rely on the DD Form 553 as a basis for his decision to arrest Gillette.  However, once Hersey's name did not turn up on the LEADS search and Captain Weaver told Gillette that Ft. Polk did not want Hersey arrested, then the reasonably trustworthy information available to Gillette did not support the inference that Hersey had committed an offense.  Gillette disputes this version of the events presented by Hersey, but at this point for purposes of this Motion, the Court must credit Hersey's story.  Issues of fact, thus, remain.

Defendants also argue that Gillette is entitled to qualified immunity.

8

An arresting officer is entitled to qualified immunity so long as his belief that he had probable cause was objectively reasonable. <u>Sornberger v. City of Knoxville, Ill.</u>, 434 F.3d 1006, 1014 (7th Cir. 2006). If one believes Hersey's version of the events, Gillette's belief was not objectively reasonable after the LEADS search turned up nothing and Captain Weaver told Gillette that Ft. Polk did not want Hersey arrested. Gillette is not entitled to qualified immunity at this point.

Gillette complains that Hersey relies on hearsay. The statements that Hersey heard Captain Weaver tell Gillette, and that the woman deputy told Gillette, are hearsay. The statements, however, are not considered for the truth of the matter asserted. Rather, the statements are admissible to show the information that was presented to Gillette at the time of the arrest. <u>Woods v. City of Chicago</u>, 234 F.3d 979, 986-87 (7th Cir. 2000). The Court considered such statements for that limited purpose.

Gillette also complains that Hersey improperly attempts to submit opinion evidence. The Court agrees. Hersey did not disclose anyone as an expert witness or provide any expert reports. <u>Fed. R. Civ. P.</u> 26(a)(2). Hersey, however, submits Affidavits that contain opinion evidence about military procedures and protocol, and the existence of probable cause. <u>E.g.</u>,

9

Response, Exhibit C, Affidavit of Edward Talley. None of this evidence is proper, and none was considered by the Court. Even without this evidence, though, Hersey's version of the events is sufficient to establish that issues of fact exist to preclude summary judgment.

THEREFORE, the Motion for Summary Judgment filed by Defendants John Gillette, the Sheriff's Office of Sangamon County and Sangamon County (d/e 39) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   December 6, 2007

    FOR THE COURT:

                s/ Jeanne E. Scott
                JEANNE E. SCOTT
                UNITED STATES DISTRICT JUDGE